United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Celso Acosta Garcia, et al., Plaintiff, <br><br> v. <br><br> Pajeoly Corp., Paolo Maietta, and Jennifer Betancur, Defendants. | ) ) ) ) ) ) ) ) Civil Action No. 18-cv-23399-Civ-Scola |

### Order on the Plaintiff's Motion for Partial Summary Judgment

This matter is before the Court on the plaintiff Celso Acosta Garcia's motion for partial summary judgment. After reviewing the parties' written submissions and exhibits, the record, and the applicable law, the Court **grants in part** Garcia's motion for partial summary judgment (**ECF No. 85**).

1. **Background**

Garcia filed this suit to recover overtime wages purportedly owed to him, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et.seq.* against the Defendants Pajeoly Corp. d/b/a La Ventana ("La Ventana"), Paolo Maietta, and Jennifer Betancur.

Garcia worked at La Ventana, a restaurant on Miami Beach that serves Latin American food, from May 16, 2016 to August 7, 2018. (ECF No. 86 at ¶¶ 2, 7.) La Ventana sold beer and food from other countries during this time. (*Id.* at ¶ 4.) Five to six employees, including Garcia, worked in the restaurant at the same time. Garcia and at least two others worked in the kitchen preparing food. (*Id.* at ¶¶ 2, 7.) Garcia was not required to have any special skills or training to work there. (*Id.* at ¶ 14.) From May 16, 2016 through May 14, 2017, Garcia earned $13.50 per hour, and from May 15, 2017 to August 7, 2018, Garcia earned $15.00 per hour. (ECF No. 86 at ¶¶ 16-17.) Garcia did not have an opportunity to increase his own profit or income. (*Id.* at ¶ 15.) Garcia regularly used equipment and tools that belonged to the Defendants such as cooking utensils, pots, pans, knives, stoves, food ingredients, and the refrigerator. (*Id.* at ¶ 20.)

Maietta and Betancur ran the day-to-day operation of the business between 2016 and 2018. (*Id.* at ¶ 21.) Betancur was a manager of La Ventana, and her duties included supervising workers in the kitchen. (ECF No. 92-1 at ¶ 10.) Maietta is the sole corporate officer, the president, and the owner of La Ventana. (*Id.* at ¶¶22.) Maietta and Betancur both signed the employees' checks, and each was a signator on La Ventana's bank account. (*Id.* at ¶ 24.) Maietta

and Betancur could hire and fire employees, and Maietta set the employees' wages. (*Id.* at ¶¶ 24-25.)

Garcia files this motion for partial summary judgment seeking findings that (1) La Ventana is an enterprise covered by the FLSA; (2) Garcia was La Ventana's employee; (3) Betancur and Maietta were Garcia's individual employers; and (4) liability as been established. (ECF No. 85.) The Defendants counter that Garcia is not owed any overtime wages because he was an independent contractor and not an employee. (ECF No. 92.)

**2. Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1316 (S.D. Fla. 2001) (Jordan, J.).

In reviewing a motion for summary judgment, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1143 (11th Cir. 2007)). The moving party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. However, "the mere existence of a scintilla of evidence in support" of the non-moving party's position is insufficient to deny summary judgment. *Santelices*, 147 F. Supp. 2d at 1317 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**3. Analysis**

Before turning to Garcia's FLSA arguments, the Court addresses the Defendants' argument that Garcia submitted a declaration and an affidavit that fail to comply with 28 U.S.C. § 1746, and thus the Court should not consider them.

**A. Garcia's Declaration and Alvarado's Affidavit**

The Defendants argue that Garcia's declaration is not properly verified pursuant to 28 U.S.C. § 1746 because the statement does not disclose whether it was executed inside or outside of the United States. (ECF No. 92 at 8-9.) This is insufficient grounds to disregard the declaration. An unsworn declaration may be given the same force as an affidavit if it is signed and dated and includes

language "in substantially" the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746. Garcia's declaration conforms to these requirements. *See* ECF No. 86-3.

The Defendants also argue that the affidavit of Elbis Alvarado does not comply with 28 U.S.C. § 1746. However, an affidavit that has been notarized need not conform with the statute. The Court will consider both Garcia's declaration and Alvarado's affidavit.

### B. FLSA Enterprise Coverage

The FLSA requires an employer to pay its employee "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). "In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is 'covered' by the FLSA." *Id.* at 1298. This requires a showing that the jurisdictional prerequisite of "interstate commerce" exists in a given case, a showing that may be made one of two ways––individual coverage or enterprise coverage. *Id.*; *see also Vallecillo v. Wall To Wall Residence Repairs, Inc.*, No. 08-22271, 2008 WL 11333114, at *1 (S.D. Fla. Oct. 31, 2008) (Ungaro, J.) ("Determining the existence of individual or enterprise coverage implicates both the jurisdictional basis and a requisite element of Plaintiff's claim."). Here, Garcia requests that the Court find that La Ventana is eligible for enterprise coverage.

An enterprise is subject to the FLSA's overtime wage provision, so long as it:

> (1) has at least two employees engaged in interstate commerce or the production of goods for interstate commerce, or who handle, sell, or otherwise work on goods or materials that had once moved or been produced for in interstate commerce, and (2) has gross sales of at least $500,000 in sales annually.

*Josendis*, 662 F.3d at 1317 (citing 29 U.S.C. § 203(s)(1)(A)(i)-(ii)). The parties have stipulated that La Ventana had a gross yearly income that exceeds $500,000 between 2016 and 2018. (ECF No. 86-1.) The parties also stipulated "to interstate commerce for each calendar year 2016, 2017, and 2018." (ECF No. 86-1.) Moreover, the undisputed facts show that La Ventana sold beer and food from other countries during this time, and that La Ventana had five to six employees working in the restaurant. (ECF Nos. 86 at ¶¶ 3-4; 92-1 at ¶¶ 3-4.) Therefore, La Ventana is subject to FLSA enterprise coverage. *See Leon v. Tapas & Tintos, Inc.*,

51 F. Supp. 3d 1290, 1295 (S.D. Fla. 2014) (restaurant is a covered enterprise subject to FLSA requirements where goods or materials used in restaurant moved in interstate commerce before they were delivered to the restaurant, and employee handled those goods when performing cooking and cleaning work for the restaurant.).

### C. Employment Relationship

The FLSA's overtime and minimum wage protections "extend only to 'employees,' a term given a rough outline by a series of broad definitions in the [FLSA]." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). The FLSA defines "employee" in relevant part as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). These definitions, albeit broad, do not bring independent contractors within the FLSA's scope. *Scantland*, 721 F.3d at 1311.

Garcia seeks partial summary judgment on the issue of whether he was an employee. (ECF No. 85 at 3-8.) "Employment status under the FLSA is a matter of law; however, subsidiary findings are considered issues of fact." *Artola v. MRC Express, Inc.*, No. 14-CV-23219, 2015 WL 12672722, at *1 (S.D. Fla. Sept. 25, 2015) (Seitz, J.). Accordingly, if there are disputed material facts supporting a reasonable conclusion that Garcia was an employee, the Court must allow those disputed facts to be resolved by a jury. *Diego v. Victory Lab, Inc.*, 282 F. Supp. 3d 1275, 1280 (S.D. Fla. 2017) (Moreno, J.).

To determine whether an individual is either an employee or an exempted independent contractor, courts look to the economic reality of the relationship between the parties, and whether that relationship demonstrates that the alleged employee is economically dependent on the alleged employer. *Scantland*, 721 F.3d at 1311. The Eleventh Circuit has considered six factors to assess whether economic dependence exists. *Id.* at 1312. These factors are:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." *Id.* (quoting *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1311–12 (5th Cir. 1976). The touchstone inquiry is "whether the alleged employee is economically dependent on the alleged employer or whether, instead, the alleged employee is in business for him or herself." *Robles*, 2013 WL 2422625, at *3.

The Defendants argue that the parties had expressly agreed that Garcia would work at La Ventana as an independent contractor, and thus he was not an employee. The Defendants rely on Florida cases or cases applying Florida law outside of the context of the FLSA for the proposition that Courts initially look to the agreement between the parties when determining whether a worker is an employee or a general contractor. (ECF No. 92 at 5.) For example, *Carlson v. FedEx Ground Package Systems, Inc.* is an Eleventh Circuit case applying Florida substantive law. 787 F.3d 1313 (11th Cir. 2015). The Eleventh Circuit said that "courts should initially look to the agreement between the parties" when determining whether the drivers were employees or independent contractors under Florida law. *Id.* at 1318-19. The other cases that the Defendants cite are not FLSA cases, but rather Florida cases applying Florida law. *See Keith v. News & Sun Sentinel Co.*, 667 So. 2d 167, 171 (Fla. 1995) ("In determining individual's status as either employee or independent contractor in the worker's compensation context, courts should initially look to the agreement between the parties."); *Florida Pub. Co. v. Lourcey*, 141 Fla. 767 (Fla. 1840) (a newspaper deliverer was not an employee of the newspaper under Florida law).

However, in an FLSA case, whether the parties intended to create an employment relationship is irrelevant to the question of employee status. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470 (11th Cir. 1982). "It is well-established that the issue of whether an employment relationship exists under the FLSA must be judged by the 'economic realities' of the individual case." *Id* (citing *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979). "That the appellants may not have had the intention to create an employment relationship is irrelevant; it is sufficient that one person suffer or permit another to work." *Id.* A worker's tax filing status is also irrelevant to the determination of whether a worker is an employee for the purposes of the FLSA. *See Artola v. MRC Express, Inc.*, 2015 WL 12672722, *2 (S.D. Fla. Sep. 25, 2015) (Seitz, J.). The Court will accordingly look to the economic realities of this case to determine the question of employment status.

### a. The nature and degree of the employer's control

"The first factor considers the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." *Scantland*, 721 F.3d at 1313. "Control arises when the purported employer goes beyond general instructions and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work." *Diego*, 282 F. Supp. 3d at 1281; *see also Robles*, 2013 WL 2422625, at *4 ("When an alleged employer provides specific direction for how workers, particularly lowskilled workers, are to perform their jobs, courts have weighed the control factor in favor of employee status.") (internal quotation marks and citations omitted). "The nature and degree of an alleged employer's control over work performance matters to the extent that 'it shows that an individual exerts such control over a meaningful part of the business that [they] stand as a separate economic entity.'" *Artola*, 2015 WL 12672722, at *6 (quoting *Usery*, 527 F.2d at 1312–13).

The facts, viewed in the light most favorable to the Defendants, indicate that the Defendants exercised oversight and control over Garcia "such that [he] did not stand as [a] separate economic entit[y] who [was] in business for [himself]." *Scantland*, 721 F.3d at 1313. The Defendants admit that they controlled some degree of Garcia's work. (ECF No. 92-1 at ¶ 9.) It is undisputed that Betancur's managerial duties included supervising the kitchen staff, including Garcia. (ECF Nos. 86 at ¶ 10; 92-1 at ¶ 10.) Betancur texted Garcia to schedule his arrival times, ensure that he arrived on time, and ensure that tasks were completed such as setting up for the next chef to arrive. (ECF Nos. 86 at ¶ 11; 86-5 at 17.) The Defendants' cook named Christian gave Garcia tasks and instructions, and throughout the day these tasks would be changed by Betancur or Christian based on La Ventana's current needs. (ECF No. 86 at ¶ 13; ECF No. 92-1 at ¶ 13.) Because Garcia was instructed and assigned tasks throughout the day by the Defendants, this factor weighs in favor of employee status.

### b. The opportunity for profit and loss

In evaluating the second factor, the Court "considers the alleged employee's opportunity for profit or loss depending upon [the employee's] managerial skill." *Scantland*, 721 F.3d at 1316. This factor indicates independent-contractor status where the opportunity for profit or loss is dependent on managerial skills "such as initiative, judgment and foresight." *Artola*, 2015 WL 12672722, at *7. An opportunity for profit or loss based "on the worker's efficiency or technical efficiency are not particularly meaningful in distinguishing between employees and independent contractors." *Id.* The Defendants do not dispute that Garcia had no opportunity to increase his profit

or income. (ECF Nos. 86 at ¶ 15; 92-1 at ¶ 15.) Instead, the Defendants paid him an amount per hour that could not be increased through managerial skill. (ECF Nos. 86 at ¶ 16-17; 92-1 at ¶ 16-17.) Accordingly, this factor weighs in favor of employee status.

### c. Investment

Next, "[c]ourts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks." *Maldonado v. Callahan's Express Delivery, Inc.*, No. 8:13–cv–292–T–33AEP, 2018 WL 398724, at *5 (Jan. 12, 2018). It is undisputed that Garcia regularly used La Ventana's equipment, including cooking utensils, pots and pans, knives, stoves, food ingredients, the refrigerator, and other kitchen equipment. (ECF Nos. 86 at ¶ 20; 92-1 at ¶ 20.) Additionally, Maietta and Betancur, as the owner and the manager, were both able to hire workers for La Ventana (ECF Nos. 86-2 at 75; 86-3 at ¶ 19), and there is nothing in the record indicating that Garcia also had the ability to hire workers. This factor strongly points toward employee status.

### d. Special skills

The "utilization of initiative and the employment of special skills indicates independent contractor status." *Artola*, 2015 WL 12672722, at *8. "A worker with unique skills and the opportunity to exercise initiative is more likely to be able to operate as an independent business entity than an interchangeable worker who completes routine tasks." *Id.* Accordingly, "[a] lack of specialization indicates that an individual is an employee, not an independent contractor." *Maldonado*, 2018 WL 398724, at *6 (quoting *Molina v. S. Fla. Express Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1286 (M.D. Fla. 2006). It is undisputed that the Defendants did not require Garcia to have special skills or special training as a condition of his hiring. (ECF Nos. 86 at ¶ 14; 92-1 at ¶ 14.) Moreover, Maietta's testimony is that Garcia did not have any special skills. (ECF No. 86-2 at 113.) This factor also indicates that Garcia was an employee.

### e. Permanency and duration

"The fifth factor considers the degree of permanency and duration of the working relationship." *Scantland*, 721 F.3d at 1318. Generally, a longer, more permanent working relationship weighs toward employee status, whereas a finite, non-exclusive work relationship is indicative of independent-contractor status because they allow for more economic independence. *Artola*, 2015 WL 12672722, at *9. Garcia worked at La Ventana for approximately two years and

three months. (ECF Nos. 86 at ¶ 16-17; 92-1 at ¶ 16.) But Garcia did not need to work for La Ventana exclusively; at some point in 2016 or 2017, Garcia was working at a second job at another restaurant in addition to La Ventana. (ECF Nos. 86-2 at 113-14; 92-5 at 155-156.) For at least part of his employment, Garcia had no other job and was completely economically dependent on La Ventana. *Id.*

Garcia's tenure of two and a half years working as a cook is lengthy and permanent. Moreover, needing to obtain a second job is insufficient to deem a worker an independent contractor. *See Robles v. RFJD Holding Co., Inc.*, 2013 WL 2422625, *5 (S.D. Fla. June 3, 2013) ("employees are generally free to increase their individual profit by taking on second jobs without undermining their FLSA-employee status with the first employer.")

### f. Integral part of business

The last factor the Court considers is whether Garcia played an integral role in the Defendants' business. *Scantland*, 721 F.3d at 1319. "The more integral the service, the more likely the worker is an employee." *Artola*, 2015 WL 12672722, at *10. Cooking and preparing food is integral to La Ventana's restaurant business. Without this service, the restaurant would not be able to operate. This factor weighs clearly and strongly toward employee status.

### g. Consideration of the factors

The undisputed facts indicate that Garcia was an employee. When all the facts are viewed in the light most favorable to the Defendants, five of the six factors weigh strongly in favor of employee status. The fifth factor considering the degree of permanency carries a little weight in favor of employee status. Thus, the Court concludes that Garcia was an "employee" and not an independent contractor under the FLSA.

### D. Individual Defendants

Garcia also seeks a finding that Maietta and Betancur were his employers to be held jointly and severally liable for FLSA purposes. "A plaintiff may seek to sue an individual employer or multiple employers in a FLSA case, as the statute contemplates that there may be several simultaneous employers who are responsible for compliance with the FLSA." *Ceant v. Aventura Limousine & Transp. Service, Inc.*, 874 F. Supp. 2d 1373, 1380 (S.D. Fla. 2012) (Scola, J.) The statutory definition of "employer" is quite broad and "encompasses both the employer for whom the employee directly works as well as any person acting directly or indirectly in the interests of an employer in relation to an employee."

*Josendis*, 662 F.3d at 1298 (citing 29 U.S.C. § 203(d)). Garcia seeks to hold individual defendants Maietta and Betancur jointly and severally liable along with La Ventana for his unpaid overtime.

### a. Maietta's individual liability

A "corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). "Operational Control means management of day-to-day business functions such as employee compensation, direct responsibility for the supervision of employees, or general operations." *Torres v. Rock & River Food, Inc.*, 244 F. Supp. 3d 1320, 1331 (S.D. Fla. 2016) (Scola, J.). Maietta is the sole corporate officer, president, and owner of La Ventana. (ECF No. 86 at ¶ 22.) He is also involved in the day-to-day operation of the restaurant. (*Id.* at ¶ 21.) He signed employees' checks, had the authority to hire and fire employees, decided the employees' wages, and supervised the quality of the employees' work. (*Id.* at ¶¶ 24-28.) Because Maietta was a corporate officer with operational control, he is Garcia's employer and can be held jointly and severally with La Ventana.

### b. Betancur's individual liability

A person who is not a corporate officer may also be held liable as an employer. *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013). An individual "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee" in order to qualify as an FLSA employer. *Gonzalez v. Metropolitan Delivery Corp.*, 2012 WL 1442668, *8 (S.D. Fla. Apr. 26, 2012) (Scola, J.) (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)). "A party need not have exclusive control of a corporation's everyday workings, so long as he has operational control of significant aspects of the corporation's day to day functions." *Id.*

The undisputed facts are sufficient to establish that Betancur was Garcia's employer. The Defendants do not dispute that she was Garcia's supervisor and manager. (ECF No. 92-1 at ¶ 10.) Betancur texted Garcia to schedule his arrival times, ensure that he arrived on time, and that tasks were completed such as setting up for the next chef to arrive. (ECF Nos. 86 at ¶ 11; 86-5 at 17.) Additionally, Betancur signed employees' checks and had the authority to hire and fire employees. (ECF No. ¶¶ 24-25.) Betancur directly supervised Garcia, and thus is an employer under the FLSA.

### E. Liability

Finally, Garcia requests that the Court find that the Defendants are jointly and severally liable for unpaid overtime wages and asserts that the jury only needs to determine the amount of damages. The Court will not make a liability finding at this juncture. There are a number of affirmative defenses that remain unresolved, including that the Defendants acted in good faith. (ECF No. 49.) Moreover, the Defendants dispute that Garcia is owed any overtime compensation at all. (ECF Nos. 86 at ¶ 30; 92-1 at ¶ 30.)

### 4. Conclusion

The Court therefore **grants in part** the Garcia's motion for partial summary judgment. (**ECF No. 33**.) The Court finds that (1) La Ventana is a covered enterprise, (2) Garcia is an employee of La Ventana, and (3) Maietta and Betancur are Garcia's individual employers. The Court declines to find that liability has been established.

**Done and ordered** in chambers, at Miami, Florida, on September 19, 2019.

Robert N. Scola, Jr.
United States District Judge